Approved, SCAO

| Original - Court | 2nd copy - Plaintiff |
|---|---|
| 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 41st | **JUDICIAL DISTRICT** **JUDICIAL CIRCUIT** **COUNTY PROBATE** | **SUMMONS** | 23 - *17451* -CZ |

**Court address**
839 10th Ave, Menominee, MI 49858

**Court telephone no.**
(906) 863-9968

Plaintiff's name(s), address(es), and telephone no(s).

HANNAH COLE and MOLLY McRAE

v

Defendant's name(s), address(es), and telephone no(s).

JEFFREY ROGG, Menominee County Prosecutor

JASON CARVIOU, Menominee County Administrator

and

MENOMINEE COUNTY

Plaintiff's attorney, bar no., address, and telephone no.

Sarah Riley Howard (P58531)      616-451-8496
Pinsky Smith, PC
146 Monroe Center St., NW - Suite 418
Grand Rapids, MI 49503

ASSIGNED TO
CIRCUIT COURT JUDGE
CHRISTOPHER S. NINOMIYA

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    | SUMMONS |

COPY

APR 11 2023

MENOMINEE CO.
41 CIRCUIT COURT

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date | Court clerk |
|---|---|---|
| 4/11/23 | 7/11/23 | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01**  (9/19)  **SUMMONS**                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| **SUMMONS** |
| Case No.   23 - |

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____   Signature: _____
Date                                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MENOMINEE

**HANNAH COLE and MOLLY McRAE,**

      Plaintiffs,

Case No: 23-*17451*-CZ

Hon. *Christopher Ninomiya*

v.

**JEFFREY ROGG**, Menominee County Prosecutor,
in his individual and personal capacities,
**JASON CARVIOU**, Menominee County Administrator,
in his individual and personal capacities, and
**MENOMINEE COUNTY,**

      Defendants.



## COMPLAINT AND JURY DEMAND

**There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge.**

### COMPLAINT

    Plaintiffs Hannah Cole and Molly McRae, by and through their attorneys,

Pinsky Smith, PC, state as follows:

### JURISDICTION, VENUE, AND PARTIES

    1.    This is an action seeking to remedy violations of the Whistleblowers'

Protection Act, MCL 15.361 et seq. ("WPA"); the Persons with Disabilities Civil

Rights Act, MCL 37.1101 et seq. ("PWDCRA"); the Elliott-Larsen Civil Rights Act,

1

MCL 37.2101 et seq. ("ELCRA"); and the Family and Medical Leave Act, 29 USCA 2601 et seq. ("FMLA").

2.      Plaintiff Hannah Cole is an individual who resides in Menominee County, Michigan.

3.      Plaintiff Molly McRae is an individual who resides in Menominee County, Michigan.

4.      Defendant Jeffrey Rogg is the Prosecutor of Menominee County. He works and lives within Menominee County, Michigan.

5.      Defendant Jason Carviou is the County Administrator of Menominee County. He works within Menominee County, Michigan.

6.      Defendant Menominee County is a county organized under Michigan law.

7.      The acts that are the subject of this action occurred in Menominee County, Michigan.

8.      The amount in controversy exceeds $25,000, exclusive of costs and attorney fees, and the matter is otherwise within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

9.      Plaintiff Cole worked as administrative support staff in the Menominee County Prosecutor's Office ("the Prosecutor's Office"). Plaintiff Cole is 22 years old and graduated with a bachelor's degree in May 2022. She started working in the Prosecutor's Office in January 2022 while she was still in college, and her position was funded by a grant through September 2022, when Defendants

2

hired Plaintiff Cole as a regular County employee. Defendants fired Plaintiff Cole on February 15, 2023.

10.    Plaintiff McRae is also employed as administrative support staff in the Prosecutor's Office, where she has worked for almost eight years. She started as a temporary employee in May 2015 and was hired as a full-time regular employee in January 2016 under a prior Prosecutor, now-Probate Judge Dan Hass. Defendants constructively terminated Plaintiff McRae's employment on February 15, 2023 because the conditions in the workplace are so unsafe under Defendant Rogg, the current Prosecutor, that Plaintiff McRae could not continue working there.

11.    Plaintiff McRae is pregnant and due to give birth in September 2023. Plaintiff McRae's obstetrician advised her on or about February 17, 2023 that it was not safe for Plaintiff McRae to continue working for Defendant Rogg during her pregnancy, even though she is not restricted from employment during her pregnancy generally.

12.    As staff in the Prosecutor's Office, Plaintiff Cole was, and Plaintiff McRae is, an employee of Defendant Menominee County ("the County"), but Defendant Rogg as the Prosecutor supervises them and generally has the power to hire and fire. However, Plaintiff McRae's position was part of a bargaining unit represented by a Union, Teamsters Local No. 406 ("the Union"), and a Collective Bargaining Agreement ("CBA") is in place providing that Plaintiff McRae could only be fired for just cause. Plaintiff Cole was not eligible to become part of the bargaining unit and covered by the CBA until September 2023.

3

13.    Defendant Rogg has been acting erratically and with severe mood swings. He frequently shouts or screams at the staff. When Plaintiff McRae reported this behavior to County Administrator Jason Carviou in the past, Mr. Carviou's response was that as the elected Prosecutor, Defendant Rogg had discretion over how to run the Prosecutor's Office and there was not much that Defendant County or Mr. Carviou could do to protect the employees from Defendant Rogg's behavior. Mr. Carviou implicitly acknowledged that Defendant Rogg's behavior would violate County policies if Defendant Rogg were not the County Prosecutor.

14.    On January 17, 2023, Dana Cole, an administrative support staff co-worker of Plaintiff Cole and Plaintiff McRae, who is no relation to Plaintiff Hannah Cole, explained to Defendant Rogg that the Clerk's Office was requiring that a certain type of order be processed in a way different from how the Prosecutor's Office had been handling it. During this conversation, Plaintiff Cole and Plaintiff McRae were also present. The fourth administrative support employee, Sarah Maus, was out of the office on her lunch break. Assistant Prosecuting Attorney Gerald Karafa, who is the only assistant prosecutor in the Prosecutor's Office, was within earshot of the conversation. Defendant Rogg grew highly agitated and irrationally livid with Dana Cole about this subject and began screaming at her. When Plaintiffs tried to intervene and smooth things over, Defendant Rogg began to scream in anger at all three of the administrative staff present and gesticulate wildly, to the point that both Plaintiffs feared that Defendant Rogg was about to

4

become physically violent. Mr. Karafa, hearing the commotion, exited his office and
entered the area where Defendant Rogg was screaming to see what was happening,
and urged Defendant Rogg to calm down.

15.     Defendant Rogg did not calm down and continued his tirade. His
behavior on January 17, 2023 constituted an assault against Plaintiffs Cole and
McRae, and Dana Cole ("the Assault").

16.     Plaintiffs became so fearful that they both exited the Prosecutor's
Office and went to Mr. Carviou's office to seek help and protection from the Assault.
Sherry DuPont, Mr. Carviou's deputy administrator, told Plaintiffs that Mr.
Carviou was absent from the building. Ms. DuPont told Plaintiffs that she had
heard Defendant Rogg's slamming of the door, even though her office is located on a
different floor of the building, and asked what was happening. Plaintiffs told Ms.
DuPont that Defendant Rogg was acting so out of control that they were afraid for
their safety as a result of the Assault. Plaintiffs asked Ms. DuPont to advise Mr.
Carviou of what was happening, and they left her office and located County building
security on duty, who was Deputy Sheriff Michael Kass. Plaintiffs reported
Defendant Rogg's Assault of them and sought Deputy Michael Kass's protection and
assistance.

17.     Eventually, Ms. DuPont instructed the administrative support
employees of the Prosecutor's Office to go home with pay for the remainder of the
day and the following day.

5

18.     Plaintiff McRae's ears were in so much pain from the volume of Defendant Rogg's screaming that she sought medical attention after she left work on January 17, 2023, and eventually followed up with her obstetrician to be examined for any impact that the episode had on her unborn baby.

19.     On January 18, 2023, Defendant Rogg emailed the administrative employees, including Plaintiffs Cole and McRae, acknowledging that he had behaved "inappropriately," but yet still essentially blaming the employees for his Assault of them. His email complained that Ms. DuPont had excused the employees from reporting to work the afternoon of the Assault and the following day, but stated that Mr. Carviou would need to "take this up" with Ms. DuPont. Defendant Rogg said that employees could meet with Mr. Carviou if they wanted but "I believe [Mr. Carviou] will tell you that ultimately the management of the office, including this issue, is mine to address and not his." Defendant Rogg also stated that he had let things get "lax" in the office and that he was going to return to strict management of the office, and follow leave and other employment policies without the alleged flexibility that he said he had been providing the employees. The email reads as a thinly-veiled threat not to complain about the Prosecutor's Office to anyone outside the Office.

20.     Plaintiff McRae continued to feel fearful for her physical safety about working in the Prosecutor's Office. Defendant Rogg's email on January 18, 2023 made her more fearful, not less, that Defendant Rogg's behavior would continue and probably escalate. After considering what to do for a few days, on January 18, 2023,

Plaintiff McRae filed a criminal report about Defendant Rogg's Assault with the Michigan State Police ("MSP").

21.     Once MSP began investigating, Defendant Rogg was upset and began retaliating against Plaintiffs. Defendant Rogg announced on January 25, 2023 that he was declaring that Dana Cole would be the office manager and able to discipline Plaintiffs, even though the creation of such a position and unilateral hiring for it is contrary to County policy and the CBA. In the past, Defendant Rogg had joked that if he ever really wanted to upset Plaintiff McRae, he would make Dana Cole her boss and give Dana Cole the power to tell Plaintiff McRae what to do.

22.     Defendant Rogg and Dana Cole began to target both Plaintiffs for retaliation, but they particularly targeted Plaintiff Hannah Cole. At this point, Plaintiff Cole was still in her first year of employment and on "probation." This meant she was not part of the Union bargaining unit or covered by the CBA, and she was still an at-will employee who could be fired for any lawful reason until September 2023.

23.     It was well-known in the Prosecutor's Office that Plaintiff Cole has the serious medical condition of Type 1 diabetes. As a result, Plaintiff Cole must test her blood sugar level during the day, and give herself insulin shots. Plaintiff Cole had also been granted a slightly longer lunch break than other employees because she needed to go the short distance to her home for a diabetic diet-compliant meal and to test her blood sugar. Defendants had granted Plaintiff Cole these minor accommodations for months.

7

24.     Once Defendant Rogg appointed Dana Cole the office supervisor, they required that Plaintiff Hannah Cole obtain proof of her medical diagnosis and hassled her about the necessity of her blood sugar testing. They also told her she could no longer have the short additional break which she required midday for her to have her diabetic lunch meal.

25.     Defendant Rogg began to make increased complaints about Plaintiff McRae's pregnancy and how inconvenient her upcoming maternity leave would be. He also expressed disgust that Plaintiff McRae would need breaks to pump breastmilk for her infant child when she returned to work.

26.     When Plaintiff McRae had her first child in September 2020, and later returned to work after maternity leave and recuperating from the birth, Defendant Rogg similarly expressed rude and disrespectful comments about Plaintiff McRae's need to pump breastmilk. When Plaintiff McRae tried to discreetly take brief breaks to privately pump breastmilk, Defendant Rogg would make crude sucking noises or act like he was drinking from a baby bottle. Plaintiff McRae kept the breastmilk in containers in the office refrigerator to take home to her baby after work and ensured it was not in eyesight as to avoid further rude comments by Defendant Rogg. Plaintiff McRae finally purchased her own mini fridge to keep her breastmilk concealed in the office until she could take it home to her then-infant child.

27.     Shortly after these events, Assistant Prosecutor Karafa enlisted the help of Plaintiffs to provide the necessary administrative support for a criminal trial he was conducting, which started on Monday, February 13, 2023. For multiple days,

8

Plaintiffs provided trial support to Mr. Karafa, working long past the usual end of the workday to complete the tasks necessary for the next day of trial.

28.     At one point, Plaintiffs accompanied the victim/complaining witness in Mr. Karafa's prosecution case in the Prosecutor's Office during the trial. Defendant Rogg entered the office, was shouting, and acted erratically, to the point that the victim noticed the behavior and asked Plaintiffs "what was wrong" with Defendant Rogg.

29.     Once the trial concluded on the morning of February 15, 2023, despite Mr. Karafa's praise of Plaintiffs' work, Defendants fired Plaintiff Cole at around noon, once the jury had rendered a verdict of guilty in Mr. Karafa's trial. Because Plaintiff Cole was still an at-will employee until September 2023, and could be fired for any lawful reason, Defendants told her only that she was allegedly being fired so the Prosecutor's Office could use her salary to pay for another assistant prosecuting attorney.

30.     Upon information and belief, this was a pretextual reason for Plaintiff Cole's termination, and the real reasons were that Defendants were retaliating against Plaintiff Cole for reporting the Assault and that Defendants were taking advantage of the fact that Plaintiff Cole did not yet fall within the bargaining unit and did not yet enjoy coverage by a Union CBA with just-cause employment protection.

31.     County Administrator Carviou told Plaintiff Cole that the County was terminating her employment, but that Plaintiff Cole could sign a letter of

9

resignation right then during the termination meeting if she wanted to avoid telling people she had been fired. Defendants did not give Plaintiff Cole time to consider this option, or time to consult with an attorney first. So Plaintiff Cole signed a letter of resignation because she was afraid she would not be able to obtain other work otherwise. However, Defendants affirmatively terminated Plaintiff Cole's employment during the termination meeting on February 15, 2023, and made clear that her employment was ending effective immediately whether she signed the letter of resignation or not.

32.     After Plaintiff Cole's termination, Plaintiff McRae felt extreme distress and anxiety, and she asked to take the remainder of the day off using the flex time she had accrued from working long hours during the trial. In the past there was no formal Prosecutor's Office policy for requesting use of flex time, and a request on short notice like this would typically be granted to any employee without issue. But Defendant Rogg and Dana Cole said that this request violated a new policy requiring advance notice for a request to take time off, even though they had never provided the contents of any alleged new policy to Plaintiff McRae before. Defendant Rogg and Dana Cole said that Dana Cole intended to take the rest of the day off and that Plaintiff McRae was required to stay and cover the office, even though there was no indication prior to that that Dana Cole intended to take time off.

33.     Plaintiff McRae consulted with her obstetrician after these events, and her obstetrician advised Plaintiff McRae that it was not safe for Plaintiff McRae and

her unborn baby for Plaintiff to return to work in the Prosecutor's Office under
these conditions. Plaintiff McRae hired an attorney and requested, through her
lawyer, that Defendants permit Plaintiff McRae to work somewhere else in the
County until the Prosecutor's Office could be made safe as a working environment.

34.    Defendants are unlawfully treating Plaintiff McRae's medical inability
to work in the unstable and unsafe conditions of the Prosecutor's Office as Plaintiff
McRae's de facto request for FMLA time off. By doing so, Defendants are interfering
with Plaintiff McRae's ability to take future FMLA leave so she can have a
maternity leave after the birth of her baby. Defendants required Plaintiff McRae to
burn through all of her accrued paid leave time, and begin FMLA unpaid time off
eligibility, in order to keep her job position while she is unable to report to the
Prosecutor's Office because of the danger to her pregnancy from Defendant Rogg's
unstable mood swings and retaliation. Plaintiff McRae ran out of paid leave on or
about March 27, 2023, and would have had no leave time left to take any maternity
leave – paid or unpaid – once her baby is born in or about September 2023.

35.    Plaintiff McRae is not medically unable to work. Instead, Plaintiff
McRae is presently unable to work – while pregnant – and do so safely while the
County permits the unlawful working conditions of the Prosecutor's Office to persist
with impunity and without consequence to the allocation of County staff to
Defendant Rogg. Defendants' treatment of Plaintiff McRae's request to be placed in
a safe working environment as a request that she needs FMLA leave is unlawful,
and it interferes with Plaintiff McRae's future known need to take FMLA leave

when she is recuperating from the anticipated birth of her baby in September 2023.

36.    Plaintiff McRae and her family could not afford to go without income any longer, and Defendants refused to provide a safe working environment or consider any solution other than requiring her to use unpaid FMLA leave. This situation meant that Plaintiff McRae would continue to go unpaid until she ran out of FMLA eligibility, at which time Defendants could fire her since she would not be able to return to work at that point while recuperating from childbirth. Accordingly, Plaintiff McRae had to accept another job offer, and on April 7, 2023, she provided the County the two weeks of notice that it requires before officially leaving her County job position so that she could take employment elsewhere.

## COUNT I – WHISTLEBLOWERS' PROTECTION ACT CLAIM AGAINST ALL DEFENDANTS

37.    Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

38.    Plaintiffs are "employees" as defined by WPA.

39.    Defendants are an "employer" and "public bodies" as defined by WPA.

40.    Plaintiffs reported violations of law, and/or what they suspected in good faith were violations of the law, when they reported to the Deputy County Administrator and to the uniformed deputy sheriff in the County offices that the Assault had occurred, i.e., that Defendant Rogg was assaultive and out of control in their workplace within the County's office and that they were concerned for their personal safety.

12

41.     Plaintiff McRae reported violations of the law, and/or what she suspected in good faith to be violations of the law, to MSP when she reported the Assault, i.e., Defendant Rogg's assaultive behavior. Ultimately, law enforcement officials opened an investigation into the Assault.

42.     Defendants engaged in acts of retaliation toward Plaintiffs because of their reports.

43.     Defendants terminated Plaintiff Cole's employment because of Plaintiffs' reports.

44.     Defendants constructively terminated Plaintiff McRae's employment because of Plaintiffs' reports.

45.     Defendants' termination of Plaintiff Cole and constructive termination of Plaintiff McRae are violations of WPA, for which Defendants are liable to Plaintiffs for damages under WPA.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs requests that the Court grant the following relief:

A. Reinstate Plaintiff Cole to her position as an employee of Menominee County in a safe working environment;

B. Reinstate Plaintiff McRae to her position as an employee of Menominee County in a safe working environment;

C. Award Plaintiffs economic and compensatory damages in an amount that would fully compensate them for the injuries alleged herein

13

resulting from the violation of WPA, including damages for mental
anguish and emotional distress;

D. Award Plaintiffs punitive damages;

E. Award Plaintiffs costs and reasonable attorney fees;

F. Award Plaintiffs such other relief as may be just and equitable.

## COUNT II – VIOLATION OF PWDCRA AS TO PLAINTIFF COLE – AGAINST ALL DEFENDANTS

46. Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

47. As defined in MCL 37.1103(d)(1)(A) of PWDCRA, Plaintiff Cole's diabetes condition is a "disability."

48. As defined in MCL 37.1201(b) of PWDCRA, Defendants were Plaintiff Cole's "employers."

49. Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by requiring her to provide additional proof of her diabetes, the need for her slightly longer meal break, and the requirement that she be permitted the minimal time necessary to test her blood sugar level and inject herself with insulin during the workday. Defendants required additional proofs and explanation despite never previously requiring additional medical certification and having observed ample evidence for more than a year that Plaintiff tested her blood sugar level and injected herself with insulin from time to time, as it is common knowledge that a diabetic must do.

14

50.     Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by taking away necessary lunch break time that they had previously granted to Plaintiff Cole and which is medically necessary for her and has no impact on her ability to perform the work of her prior job position.

51.     Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by terminating her employment.

52.     Defendants' actions as described in the preceding paragraphs violated PWDCRA and caused Plaintiff Cole damages for which Defendants are liable.

53.     As a result of the foregoing, Plaintiff Cole lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendants are liable.

## RELIEF SOUGHT

WHEREFORE, Plaintiff Cole requests that the Court grant the following relief:

A. Reinstate Plaintiff Cole to her position or a comparable position with a safe working environment where she may be granted necessary medical accommodation for her diabetes;

B. Award Plaintiff Cole economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein;

C. Award Plaintiff Cole costs and reasonable attorney fees;

D. Award Plaintiff Cole such other relief as may be just and equitable.

15

## COUNT III – VIOLATION OF ELCRA AS TO PLAINTIFF McRAE – AGAINST ALL DEFENDANTS

54.     Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

55.     Defendant Rogg's jokes and complaints about Plaintiff McRae when she previously pumped breastmilk for an infant child constituted discrimination on the basis of sex and pregnancy in violation of ELCRA.

56.     Defendants' constructive termination of Plaintiff McRae's employment constitutes discrimination on the basis of sex and pregnancy in violation of ELCRA.

57.     Defendants' actions as described in the preceding paragraphs caused Plaintiff McRae damages in violation of ELCRA for which Defendants are liable.

58.     As a result of the foregoing, Plaintiff McRae lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendants are liable.

59.     As a result of the foregoing, Plaintiff McRae lost the ability to take maternity leave when her baby is born in or around September 2023. This is because Defendants have required that she use all of her eligible paid leave and unpaid time off under Family and Medical Leave Act now while she is unable to return to her position in the Prosecutor's Office, since Defendants refuse to make that working environment safe for Plaintiff McRae and her unborn baby.

### RELIEF SOUGHT

WHEREFORE, Plaintiff McRae requests that the Court grant the following relief:

A. Reinstate Plaintiff McRae to a comparable County position with a safe working environment, and restore the leave time that Defendants required Plaintiff McRae to take during the period that Defendants refused to provide a safe working environment;

B. Award Plaintiff McRae economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein;

C. Award Plaintiff McRae punitive damages;

D. Award Plaintiff McRae costs and reasonable attorney fees;

E. Award Plaintiff McRae such other relief as may be just and equitable.

## COUNT IV – VIOLATION OF FMLA AS TO PLAINTIFF McRAE – AGAINST ALL DEFENDANTS – FMLA INTERFERENCE MADE UNLAWFUL BY 29 USCA 2615(a)

60. Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

61. Plaintiff McRae was entitled to take FMLA leave once she gave birth, anticipated to be in or about September 2023. Defendants were all aware that Plaintiff McRae was pregnant, that she was due to give birth in or about September 2023, and that she was eligible for and intended to use her FMLA leave for maternity leave to recuperate from the birth once her baby was born.

62. Defendants took a variety of adverse actions against Plaintiff McRae which interfered with her ability to take FMLA leave when she sought to do so in September 2023, i.e., Defendants County and Carviou permitted Defendant Rogg to

17

act with impunity, violate the law, violate the CBA, and provide an unsafe working environment to Plaintiffs because he is an elected official. However, Defendants County and Carviou could have, and should have, required that Defendant Rogg follow County policies like everyone else, and removed and reallocated Defendant Rogg's County office resources – including but not limited to support employees – when Defendant Rogg refused to comply.

63.    Defendants' various adverse actions unlawfully interfered with Plaintiff McRae's ability to take FMLA leave to recuperate from the birth of her baby and have a maternity leave to which she was entitled.

64.    Defendants' various adverse actions were related to Plaintiff McRae's attempt to take FMLA leave in or about September after she gave birth, and her known desire to preserve as much leave time as possible for that purpose.

65.    Defendants' various adverse actions were intended to force Plaintiff McRae to leave County employment to seek other work and to do so without the necessity of having just cause to terminate her, as would be required under the CBA.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff McRae requests that the Court grant the following relief:

A. Reinstate Plaintiff McRae to a comparable County position with a safe working environment, and restore the leave time that

18

Defendants required Plaintiff McRae to take during the period that
Defendants refused to provide a safe working environment;

B.  Award Plaintiff McRae economic and liquidated damages in an
amount that would fully compensate her for the injuries alleged
herein;

C.  Award Plaintiff McRae costs and reasonable attorney fees;

D.  Award Plaintiff McRae such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiffs

*Sarah R. Howard*

Dated: April 10, 2023        By:_____

Sarah Riley Howard (P58531)
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

19

**JURY DEMAND**

To the extent that jury trial is available as to any of the issues set forth above, Plaintiffs hereby demand same.

PINSKY SMITH, PC
Attorneys for Plaintiffs

Dated: April 10, 2023          By:_____

Sarah Riley Howard (P58531)
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

20

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MENOMINEE

———————————————————

**HANNAH COLE and MOLLY McRAE,**

        Plaintiffs,

v.

**JEFFREY ROGG**, Menominee County Prosecutor,
in his individual and personal capacities,
**JASON CARVIOU,** Menominee County Administrator,
in his individual and personal capacities, and
**MENOMINEE COUNTY,**

        Defendants.

Case No:  23-17451-CZ

Hon. Michael K. Pope
Sitting by SCAO Assignment

————————————————————————————————————————

## FIRST AMENDED COMPLAINT AND JURY DEMAND

————————————————————————————————————————

> **There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge.**

### COMPLAINT

Plaintiffs Hannah Cole and Molly McRae, by and through their attorneys, Pinsky Smith, PC, state as follows:

### JURISDICTION, VENUE, AND PARTIES

1.      This is an action seeking to remedy violations of the Whistleblowers' Protection Act, MCL 15.361 et seq. ("WPA"); the Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. ("PWDCRA"); the Elliott-Larsen Civil Rights Act,

1

MCL 37.2101 et seq. ("ELCRA"); and the Family and Medical Leave Act, 29 USCA 2601 et seq. ("FMLA").

2.      Plaintiff Hannah Cole is an individual who resides in Menominee County, Michigan.

3.      Plaintiff Molly McRae is an individual who resides in Menominee County, Michigan.

4.      Defendant Jeffrey Rogg is the Prosecutor of Menominee County. He works and lives within Menominee County, Michigan.

5.      Defendant Jason Carviou is the County Administrator of Menominee County. He works within Menominee County, Michigan.

6.      Defendant Menominee County is a county organized under Michigan law.

7.      The acts that are the subject of this action occurred in Menominee County, Michigan.

8.      The amount in controversy exceeds $25,000, exclusive of costs and attorney fees, and the matter is otherwise within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

9.      Plaintiff Cole worked as administrative support staff in the Menominee County Prosecutor's Office ("the Prosecutor's Office"). Plaintiff Cole is 22 years old and graduated with a bachelor's degree in May 2022. She started working in the Prosecutor's Office in January 2022 while she was still in college, and her position was funded by a grant through September 2022, when Defendants

hired Plaintiff Cole as a regular County employee. Defendants fired Plaintiff Cole on February 15, 2023.

10.     Plaintiff McRae was also employed as administrative support staff in the Prosecutor's Office, where she worked for almost eight years. She started as a temporary employee in May 2015 under a prior Prosecutor, now-Probate Judge Dan Hass, and was first hired as a full-time regular employee in January 2016. Defendants constructively terminated Plaintiff McRae's employment on February 15, 2023 because the conditions in the workplace are so unsafe under Defendant Rogg, the current Prosecutor, that Plaintiff McRae could not continue working there.

11.     Plaintiff McRae is pregnant and due to give birth in September 2023. Plaintiff McRae's obstetrician advised her on or about February 17, 2023 that it was not safe for Plaintiff McRae to continue working for Defendant Rogg during her pregnancy, even though she is not restricted from employment during her pregnancy generally.

12.     As staff in the Prosecutor's Office, Plaintiffs were employees of Defendant Menominee County ("the County"), but Defendant Rogg as the Prosecutor supervised them and generally had the power to hire and fire. However, Plaintiff McRae's position was part of a bargaining unit represented by a Union, Teamsters Local No. 406 ("the Union"), and a Collective Bargaining Agreement ("CBA") is in place providing that Plaintiff McRae could only be fired for just cause. Plaintiff Cole was not eligible to become part of the bargaining unit and covered by

the CBA until September 2023.

13.     Defendant Rogg has been acting erratically and with severe mood swings. He frequently shouts or screams at the staff. When Plaintiff McRae reported this behavior to County Administrator Jason Carviou in the past, Mr. Carviou's response was that as the elected Prosecutor, Defendant Rogg had discretion over how to run the Prosecutor's Office and there was not much that Defendant County or Mr. Carviou could do to protect the employees from Defendant Rogg's behavior. Mr. Carviou implicitly acknowledged that Defendant Rogg's behavior would violate County policies if Defendant Rogg were not the County Prosecutor.

14.     On January 17, 2023, Dana Cole, an administrative support staff co-worker of Plaintiff Cole and Plaintiff McRae, who is no relation to Plaintiff Hannah Cole, explained to Defendant Rogg that the Clerk's Office was requiring that a certain type of order be processed in a way different from how the Prosecutor's Office had been handling it. During this conversation, Plaintiff Cole and Plaintiff McRae were also present. The fourth administrative support employee, Sarah Maus, was out of the office on her lunch break. Assistant Prosecuting Attorney Gerald Karafa, who is the only assistant prosecutor in the Prosecutor's Office, was within earshot of the conversation. Defendant Rogg grew highly agitated and irrationally livid with Dana Cole about this subject and began screaming at her. When Plaintiffs tried to intervene and smooth things over, Defendant Rogg began to scream in anger at all three of the administrative staff present and gesticulate

4

wildly, to the point that both Plaintiffs feared that Defendant Rogg was about to become physically violent. Mr. Karafa, hearing the commotion, exited his office and entered the area where Defendant Rogg was screaming to see what was happening, and urged Defendant Rogg to calm down.

15.     Defendant Rogg did not calm down and continued his tirade. His behavior on January 17, 2023 constituted an assault against Plaintiffs Cole and McRae, and Dana Cole ("the Assault").

16.     Plaintiffs became so fearful that they both eventually exited the Prosecutor's Office. First, Plaintiff McRae went to Mr. Carviou's office to seek help and protection from the Assault. When she did not find anyone there, she went for help to Deputy Michael Kass, who was the County Sheriff's Deputy on duty for security in the building, and she reported the Assault to Deputy Kass. Then Plaintiff McRae went back to the County Administrator's Office and ran into Plaintiff Cole on the way there, who by this time had also left the Prosecutor's Office to seek assistance. Sherry DuPont, Mr. Carviou's deputy administrator, was then in the County Administrator's Office, and told Plaintiffs that Mr. Carviou was absent from the building. Ms. DuPont told Plaintiffs that she had heard Defendant Rogg's slamming of the door, even though her office is located on a different floor of the building, and asked what was happening. Plaintiffs told Ms. DuPont that Defendant Rogg was acting so out of control that they were afraid for their safety as a result of the Assault. Plaintiffs asked Ms. DuPont to advise Mr. Carviou of what was happening.

17.     Eventually, Ms. DuPont instructed the administrative support employees of the Prosecutor's Office to go home with pay for the remainder of the day and the following day.

18.     Plaintiff McRae's ears were in so much pain from the volume of Defendant Rogg's slamming the office door that she sought medical attention the next day, and eventually followed up with her obstetrician to be examined for any impact that the episode had on her unborn baby.

19.     On January 18, 2023, Defendant Rogg emailed the administrative employees, including Plaintiffs Cole and McRae, acknowledging that he had behaved "inappropriately," but yet still essentially blaming the employees for his Assault of them. His email complained that Ms. DuPont had excused the employees from reporting to work the afternoon of the Assault and the following day, but stated that Mr. Carviou would need to "take this up" with Ms. DuPont. Defendant Rogg said that employees could meet with Mr. Carviou if they wanted but "I believe [Mr. Carviou] will tell you that ultimately the management of the office, including this issue, is mine to address and not his." Defendant Rogg also stated that he had let things get "lax" in the office and that he was going to return to strict management of the office, and follow leave and other employment policies without the alleged flexibility that he said he had been providing the employees. The email reads as a thinly-veiled threat not to complain about the Prosecutor's Office to anyone outside the Office.

20.     Plaintiff McRae continued to feel fearful for her physical safety about

working in the Prosecutor's Office. Defendant Rogg's email on January 18, 2023 made her more fearful, not less, that Defendant Rogg's behavior would continue and probably escalate. Plaintiffs filed a criminal report about Defendant Rogg's Assault with Michigan State Police ("MSP"), and submitted to interviews by the MSP detective regarding Defendant Rogg's behavior.

21.     Once MSP began investigating, Defendant Rogg was upset and began retaliating against Plaintiffs. Defendant Rogg announced on January 25, 2023 that he was declaring that Dana Cole would be the office manager and able to discipline Plaintiffs, even though the creation of such a position and unilateral hiring for it is contrary to County policy and the CBA. In the past, Defendant Rogg had joked that if he ever really wanted to upset Plaintiff McRae, he would make Dana Cole her boss and give Dana Cole the power to tell Plaintiff McRae what to do.

22.     Defendant Rogg and Dana Cole began to target both Plaintiffs for retaliation. At this point, Plaintiff Hannah Cole was still in her first year of employment and on "probation." This meant she was not part of the Union bargaining unit or covered by the CBA, and she was still an at-will employee who could be fired for any lawful reason until September 2023.

23.     It was well-known in the Prosecutor's Office that Plaintiff Cole has the serious medical condition of Type 1 diabetes. As a result, Plaintiff Cole must test her blood sugar level during the day, and give herself insulin shots. Plaintiff Cole had also been granted a slightly longer lunch break because she needed to go the short distance to her home for a diabetic diet-compliant meal and to test her blood

sugar. Defendants had granted Plaintiff Cole these minor accommodations for months. Defendants had also permitted other employees to have a slightly longer lunch break for various reasons.

24.     Once Defendant Rogg appointed Dana Cole the office supervisor, they required that Plaintiff Hannah Cole obtain proof of her medical diagnosis and hassled her about the necessity of her blood sugar testing. They also told her she could no longer have the short additional break which she required midday for her to have her diabetic lunch meal.

25.     Dana Cole made complaints about Plaintiff McRae's first pregnancy and birth of her first child in September 2020, and about how inconvenient her maternity leave was. Defendant Rogg also expressed disgust that Plaintiff McRae needed breaks to pump breastmilk for her infant child upon her return to work after her first pregnancy.  He made rude and disrespectful comments about Plaintiff McRae's need to pump breastmilk. When Plaintiff McRae tried to discreetly take brief breaks to privately pump breastmilk, Defendant Rogg would make crude sucking noises or act like he was drinking from a baby bottle. He also used his hands to crudely make pumping motions on his own breast. Plaintiff McRae felt it necessary to purchase her own mini fridge in which to store her breastmilk instead of the office refrigerator to avoid further rude comments by Defendant Rogg.

26.     Defendants were aware of Plaintiff McRae's second pregnancy and due date in or about September 2023.

27.     Shortly after the Assault, Assistant Prosecutor Karafa enlisted the

help of Plaintiffs to provide the necessary administrative support for a criminal trial he was conducting, which started on Monday, February 13, 2023. For multiple days, Plaintiffs provided trial support to Mr. Karafa, working long past the usual end of the workday to complete the tasks necessary for the next day of trial.

28.     At one point, Plaintiffs accompanied the victim/complaining witness in Mr. Karafa's prosecution case during the trial. In a hallway, Defendant Rogg came past Plaintiffs and the victim, acting angrily and erratically, to the point that the victim noticed the behavior and asked Plaintiffs "what was wrong" with Defendant Rogg.

29.     Once the trial concluded on the morning of February 15, 2023, despite praise of Plaintiffs' work by both Mr. Karafa and Defendant Rogg, Defendants fired Plaintiff Cole at around noon, once the jury had rendered a verdict of guilty in Mr. Karafa's trial. Plaintiff Cole was still an at-will employee until September 2023, and could be fired for any lawful reason. Defendants told her only that she was allegedly being fired so the Prosecutor's Office could use her salary to pay for another assistant prosecuting attorney.

30.     Upon information and belief, this was a pretextual reason for Plaintiff Cole's termination, and the real reasons were that Defendants were retaliating against Plaintiff Cole for reporting the Assault and that Defendants were taking advantage of the fact that Plaintiff Cole did not yet fall within the bargaining unit and did not yet enjoy coverage by a Union CBA with just-cause employment protection.

9

31.     County Administrator Carviou told Plaintiff Cole that the County was terminating her employment, but that Plaintiff Cole could sign a letter of resignation right then during the termination meeting if she wanted to avoid telling people she had been fired. Defendants did not give Plaintiff Cole time to consider this option, or time to consult with an attorney first. So Plaintiff Cole signed a letter of resignation because she was afraid she would not be able to obtain other work otherwise. However, Defendants affirmatively terminated Plaintiff Cole's employment during the termination meeting on February 15, 2023, and made clear that her employment was ending effective immediately whether she signed the letter of resignation or not.

32.     After Plaintiff Cole's termination, Plaintiff McRae felt extreme distress and anxiety. Plaintiff McRae had planned to take part of the end of the day off using the flex time she had accrued from working long hours during the trial. Plaintiff McRae had also made note of her intent to use flex time in the office calendar, which was how the practice had always worked in the office. In the past there was no formal Prosecutor's Office policy for requesting use of flex time, and a request on even relatively short notice would typically be granted to any employee without issue. There was no note in the calendar that either Defendant Rogg or Dana Cole intended to use flex time when Plaintiff McRae planned to do so. But Defendant Rogg and Dana Cole said that Plaintiff McRae's request to use flex time violated a new policy requiring advance notice for a request to take time off, even though they had never provided the contents of any alleged new policy to Plaintiff

10

McRae before. Defendant Rogg and Dana Cole said that Dana Cole intended to take the rest of the day off and that Plaintiff McRae was required to stay and cover the office, even though there was no indication prior to that that Dana Cole intended to take time off. Dana Cole also became upset when Plaintiff McRae tried to assist Plaintiff Cole in removing her personal items from the office after being abruptly fired by Defendants. The stress of this treatment caused Plaintiff McRae to feel ill, and Plaintiff McRae told Dana Cole that she was not feeling well and needed to leave. Dana Cole then told Plaintiff McRae that she could not use her pregnancy as an excuse and that Plaintiff McRae needed to cover the office and forgo using her flex time that afternoon.

33.     Plaintiff McRae consulted with her obstetrician after these events, and her obstetrician advised Plaintiff McRae that it was not safe for Plaintiff McRae and her unborn baby for Plaintiff to return to work in the Prosecutor's Office under these conditions. Plaintiff McRae hired an attorney and requested, through her lawyer, that Defendants permit Plaintiff McRae to work somewhere else in the County until the Prosecutor's Office could be made safe as a working environment.

34.     Defendants unlawfully treated Plaintiff McRae's medical inability to work in the unstable and unsafe conditions of the Prosecutor's Office as Plaintiff McRae's de facto request for FMLA time off. By doing so, Defendants interfered with Plaintiff McRae's ability to take future FMLA leave so she could have a maternity leave after the birth of her baby. Defendants required Plaintiff McRae to burn through all of her accrued paid leave time, and begin FMLA unpaid time off

eligibility, in order to keep her job position while she was unable to report to the Prosecutor's Office because of the danger to her pregnancy from Defendant Rogg's unstable mood swings and retaliation. Plaintiff McRae ran out of paid leave on or about March 27, 2023, and would have had no leave time left to take any maternity leave – paid or unpaid – once her baby is born in or about September 2023.

35.    Plaintiff McRae is not medically unable to work. Instead, Plaintiff McRae is presently unable to work – while pregnant – and do so safely while the County permits the unlawful working conditions of the Prosecutor's Office to persist with impunity and without consequence to the allocation of County staff to Defendant Rogg. Defendants' treatment of Plaintiff McRae's request to be placed in a safe working environment as a request that she needs FMLA leave was unlawful, and it interfered with Plaintiff McRae's future known need to take FMLA leave when she would be recuperating from the anticipated birth of her baby in September 2023.

36.    Plaintiff McRae and her family could not afford to go without income any longer, and Defendants refused to provide a safe working environment or consider any solution other than requiring her to use unpaid FMLA leave. This situation meant that Plaintiff McRae would continue to go unpaid until she ran out of FMLA eligibility, at which time Defendants could fire her since she would not be able to return to work at that point while recuperating from childbirth. Accordingly, Plaintiff McRae had to accept another job offer, and on April 7, 2023, she provided the County the two weeks of notice that it requires before officially leaving her

County job position so that she could take employment elsewhere.

## COUNT I – WHISTLEBLOWERS' PROTECTION ACT CLAIM AGAINST ALL DEFENDANTS

37.     Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

38.     Plaintiffs are "employees" as defined by WPA.

39.     Defendants are an "employer" and "public bodies" as defined by WPA.

40.     Plaintiffs reported violations of law, and/or what they suspected in good faith were violations of the law, when they reported to the Deputy County Administrator and to the uniformed deputy sheriff in the County offices that the Assault had occurred, i.e., that Defendant Rogg was assaultive and out of control in their workplace within the County's office and that they were concerned for their personal safety.

41.     Plaintiffs reported violations of the law, and/or what they suspected in good faith to be violations of the law, to MSP when they reported the Assault, i.e., Defendant Rogg's assaultive behavior. Ultimately, law enforcement officials opened an investigation into the Assault.

42.     Defendants engaged in acts of retaliation toward Plaintiffs because of their reports.

43.     Defendants terminated Plaintiff Cole's employment because of Plaintiffs' reports.

44.     Defendants constructively terminated Plaintiff McRae's employment because of Plaintiffs' reports.

45.     Defendants' termination of Plaintiff Cole and constructive termination of Plaintiff McRae are violations of WPA, for which Defendants are liable to Plaintiffs for damages under WPA.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs requests that the Court grant the following relief:

A.   Reinstate Plaintiff Cole to her position as an employee of Menominee County in a safe working environment;

B.   Reinstate Plaintiff McRae to her position as an employee of Menominee County in a safe working environment;

C.   Award Plaintiffs economic and compensatory damages in an amount that would fully compensate them for the injuries alleged herein resulting from the violation of WPA, including damages for mental anguish and emotional distress;

D.   Award Plaintiffs punitive damages;

E.   Award Plaintiffs costs and reasonable attorney fees;

F.   Award Plaintiffs such other relief as may be just and equitable.

## COUNT II – VIOLATION OF PWDCRA AS TO PLAINTIFF COLE – AGAINST ALL DEFENDANTS

46.     Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

14

47.   As defined in MCL 37.1103(d)(1)(A) of PWDCRA, Plaintiff Cole's diabetes condition is a "disability."

48.   As defined in MCL 37.1201(b) of PWDCRA, Defendants were Plaintiff Cole's "employers."

49.   Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by requiring her to provide additional proof of her diabetes, the need for her slightly longer meal break, and the requirement that she be permitted the minimal time necessary to test her blood sugar level and inject herself with insulin during the workday. Defendants required additional proofs and explanation despite never previously requiring additional medical certification and having observed ample evidence for more than a year that Plaintiff tested her blood sugar level and injected herself with insulin from time to time, as it is common knowledge that a diabetic must do.

50.   Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by taking away necessary lunch break time that they had previously granted to Plaintiff Cole and which is medically necessary for her and has no impact on her ability to perform the work of her prior job position.

51.   Defendants discriminated against and harassed Plaintiff Cole on the basis of her disability by terminating her employment.

52.   Defendants' actions as described in the preceding paragraphs violated PWDCRA and caused Plaintiff Cole damages for which Defendants are liable.

53.   As a result of the foregoing, Plaintiff Cole lost earnings and benefits

15

and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendants are liable.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff Cole requests that the Court grant the following relief:

    A. Reinstate Plaintiff Cole to her position or a comparable position with a safe working environment where she may be granted necessary medical accommodation for her diabetes;

    B. Award Plaintiff Cole economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein;

    C. Award Plaintiff Cole costs and reasonable attorney fees;

    D. Award Plaintiff Cole such other relief as may be just and equitable.

**COUNT III – VIOLATION OF ELCRA AS TO PLAINTIFF McRAE
– AGAINST ALL DEFENDANTS**

54.    Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

55.    Defendant Rogg's jokes and complaints about Plaintiff McRae when she previously pumped breastmilk for an infant child constituted discrimination on the basis of sex and pregnancy in violation of ELCRA.

56.    Defendants' constructive termination of Plaintiff McRae's employment constitutes discrimination on the basis of sex and pregnancy in violation of ELCRA.

57.    Defendants' actions as described in the preceding paragraphs caused Plaintiff McRae damages in violation of ELCRA for which Defendants are liable.

16

58.     As a result of the foregoing, Plaintiff McRae lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendants are liable.

59.     As a result of the foregoing, Plaintiff McRae lost the ability to take maternity leave when her baby is born in or around September 2023. This is because Defendants have required that she use all of her eligible paid leave and unpaid time off under Family and Medical Leave Act now while she is unable to return to her position in the Prosecutor's Office, since Defendants refuse to make that working environment safe for Plaintiff McRae and her unborn baby.

## RELIEF SOUGHT

WHEREFORE, Plaintiff McRae requests that the Court grant the following relief:

      A.  Reinstate Plaintiff McRae to a comparable County position with a safe working environment, and restore the leave time that Defendants required Plaintiff McRae to take during the period that Defendants refused to provide a safe working environment;

      B.  Award Plaintiff McRae economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein;

      C.  Award Plaintiff McRae punitive damages;

      D.  Award Plaintiff McRae costs and reasonable attorney fees;

      E.  Award Plaintiff McRae such other relief as may be just and equitable.

## <u>COUNT IV – VIOLATION OF FMLA AS TO PLAINTIFF McRAE</u>
### <u>– AGAINST ALL DEFENDANTS –</u>
### <u>FMLA INTERFERENCE MADE UNLAWFUL BY 29 USCA 2615(a)</u>

60.     Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

61.     Plaintiff McRae was entitled to take FMLA leave once she gave birth, anticipated to be in or about September 2023. Defendants were all aware that Plaintiff McRae was pregnant, that she was due to give birth in or about September 2023, and that she was eligible for and intended to use her FMLA leave for maternity leave to recuperate from the birth once her baby was born.

62.     Defendants took a variety of adverse actions against Plaintiff McRae which interfered with her ability to take FMLA leave when she sought to do so in September 2023, i.e., Defendants County and Carviou permitted Defendant Rogg to act with impunity, violate the law, violate the CBA, and provide an unsafe working environment to Plaintiffs because he is an elected official. However, Defendants County and Carviou could have, and should have, required that Defendant Rogg follow County policies like everyone else, and removed and reallocated Defendant Rogg's County office resources – including but not limited to support employees – when Defendant Rogg refused to comply.

63.     Defendants' various adverse actions unlawfully interfered with Plaintiff McRae's ability to take FMLA leave to recuperate from the birth of her baby and have a maternity leave to which she was entitled.

64.     Defendants' various adverse actions were related to Plaintiff McRae's

attempt to take FMLA leave in or about September after she gave birth, and her known desire to preserve as much leave time as possible for that purpose.

65. Defendants' various adverse actions were intended to force Plaintiff McRae to leave County employment to seek other work and to do so without the necessity of having just cause to terminate her, as would be required under the CBA.

## RELIEF SOUGHT

WHEREFORE, Plaintiff McRae requests that the Court grant the following relief:

A. Reinstate Plaintiff McRae to a comparable County position with a safe working environment, and restore the leave time that Defendants required Plaintiff McRae to take during the period that Defendants refused to provide a safe working environment;

B. Award Plaintiff McRae economic and liquidated damages in an amount that would fully compensate her for the injuries alleged herein;

C. Award Plaintiff McRae costs and reasonable attorney fees;

D. Award Plaintiff McRae such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiffs

Dated: April 25, 2023          By:

          Sarah Riley Howard (P58531)
          146 Monroe Center, N.W., Suite 418
          Grand Rapids, MI 49503
          (616) 451-8496
          showard@pinskysmith.com

20

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiffs hereby demand same.

PINSKY SMITH, PC
Attorneys for Plaintiffs

Dated: April 25, 2023          By:_____

Sarah Riley Howard (P58531)
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

21